HENRY BOLLN v. STATE OF NEBRASKA.

FILED MAY 18, 1897. No. 8508.

1. **Prosecution by Information.** Chapter 54 of the Criminal Code authorizes prosecutions of felonies by information filed by the public prosecutor of the proper county.

2. **Plea in Abatement: DENIAL OF JURY TRIAL: REVIEW.** A denial of a jury trial upon an issue of fact tendered by a plea in abatement is not reversible error, since the record fails to disclose that the prisoner was in some manner prejudiced thereby.

3. **Information: FORM.** It is not essential to the validity of an information that it should conclude "against the peace and dignity of the state."

4. **Jurors: COMPETENCY.** An opinion formed by a juror does not affect his competency or afford cause for challenge, unless it is unqualified as to the guilt or innocence of the accused of the offense charged. *Basye v. State*, 45 Neb., 261, followed.

5. ——: ——: **OPINIONS.** An opinion based upon rumor and newspaper reports alone does not afford cause for challenge, where it is shown that such opinion will not interfere with the juror's rendering a fair and impartial verdict upon the evidence under the instructions of the court.

6. **Embezzlement: EVIDENCE.** Under section 124 of the Criminal Code the failure of any public officer to account to, or make settlement of his official accounts with, the proper legal authority within reasonable time after notice so to do, as well as the refusal of such officer to promptly pay over to his successor any public moneys or securities on the legal requirement of any authorized officer, is made *prima facie* evidence of embezzlement.

7. ——: **INSTRUCTIONS.** *Held,* That the accused was not prejudiced upon the trial by the giving of the fifteenth and sixteenth paragraphs of the charge of the court.

8. ——: **EVIDENCE.** Evidence examined, and *held* sufficient to warrant a conviction for embezzlement of public moneys.

9. ——: ——: **INFORMATION.** Under an information against a public officer charging embezzlement on a certain date, evidence of a continuous series of conversions of money by the defendant at different times and in different amounts before that date will support a verdict finding the aggregate sum as the amount of a single embezzlement.

10. ——: **CITY TREASURER.** The disbursement of public funds by a city treasurer, except upon a warrant drawn by the proper authority, constitutes embezzlement.

11. ——: **CUSTOM CONTRARY TO STATUTE.** A custom or usage repugnant to the commands of a statute will not prevail against such statute.

12. **Criminal Law: TRIAL: PRESENCE OF DEFENDANT.** In a criminal prosecution, the presence of the defendant at the trial being once shown by the record, will be presumed to have continued to the end, where the contrary is not made to appear.

ERROR to the district court for Douglas county.  Tried below before BAKER, J.  *Affirmed.*

. *Joel W. West* and *John M. Macfarland,* for plaintiff in error.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

NORVAL, J.

Henry Bolln was prosecuted in the district court of Douglas county upon an information filed by the county attorney charging him with the embezzlement of public moneys.  The information was in sixteen counts, a part of which charging the defendant with embezzlement of certain moneys of the city of Omaha, and the remaining counts were for the embezzlement of certain moneys belonging to the school district of the city of Omaha.  A motion to quash the information was made, which was overruled by the court.  A plea in abatement was filed, to which the county attorney interposed a demurrer, which was overruled as to the ninth ground of the plea and sustained as to the other seventeen grounds therein set forth.  The state replied to the ninth paragraph of the plea in abatement, and the accused demanded a jury trial upon said paragraph of his plea, which was denied; and upon a trial to the court, it overruled the plea in abatement.  The defendant demurred to the several counts of the information, which the court promptly overruled, and the accused, when called upon to plead to the information, having stood mute, the court entered a plea of not guilty for him.  The county attorney, by leave of court, entered a *nolle prosequi* as to the fifth and tenth counts of the information, and upon the trial the accused was found guilty as charged in the fourth, ninth, and eleventh counts, but was acquitted as to all the others upon which he was tried.  From the denying of his motion for a new trial, the defendant has brought this writ of error.

While we are confronted with a record of over 1,000 pages, and a petition in error containing 279 assignments, the questions to be determined are not numerous, since most of the assignments are not discussed in the brief of defendant below. The familiar rule that assignments not relied on the briefs are deemed waived will be adhered to in this case.

The first contention of counsel for the accused, and which was raised by the motion to quash the information, plea in abatement, and by demurrer, is that there is no authority in this state for the prosecutions of crimes by information. The power of the legislature to provide by appropriate enactment for the trial of criminal cases in the district court upon informations filed by the public prosecutor, or county attorney, instead of indictments, is not and doubtless could not be successfully questioned, in view of section 10, article 1 of the state constitution, which declares, *inter alia,* "that the legislature may by law provide for holding persons to answer for criminal offenses on information of a public prosecutor; and may by law abolish, limit, change, amend, or otherwise regulate the grand jury system." Certainly the language quoted is broad enough to justify the law-making body to provide for prosecution of offenses by information alone. The argument of the prisoner's counsel is that the legislature of this state has not, as yet, so enacted, at least by express, plain, and unequivocal language. In 1885 a law was passed, which received executive approval, entitled, "An act to provide for prosecuting offenses on information and to dispense with the calling of grand juries except by order of the district judges." (Criminal Code, ch. 54.) If said act has not by plain and apt words made suitable provision for the prosecutions of offenses against the penal laws of the state by information, clearly it is not the fault of the title of the law to which reference has just been had. Language which would have more definitely or appropriately designated such a purpose could not easily have been chosen.

But it is argued that there is nothing in the title to indicate that the law was intended to provide for the prosecution of felonies by information. This position is not tenable. The title indicates a purpose to provide for the "prosecution of offenses on information," and the word offenses in the sense it is used embraces all infractions of the Criminal Code of the grade of felonies. In *Miller v. State*, 29 Neb., 437, it was held that a prosecution for murder may be by information. The object indicated by the title to the act under consideration is clearly enough expressed in the body of the law, as an examination of its several provisions will disclose. The first section (sec. 578, ch. 54) provides: "That the several courts of this state shall possess and may exercise the same power and jurisdiction to hear, try, and determine prosecutions upon information, for crimes, misdemeanors, and 'offenses, to issue writs and process, and do all other acts therein, as they possess and may exercise in cases of like prosecutions upon indictments." By this the same jurisdiction was conferred upon the courts to hear, try, and determine prosecutions for crimes, misdemeanors, and offenses upon information as theretofore existed and had been exercised in like prosecutions upon indictments found by a grand jury. The subsequent sections of the act, in connection with the one quoted above, not only give authority for the prosecution by information, but point out the procedure as well. Section 2 requires all informations to be filed in term time in the court having jurisdiction of the particular offense by the prosecuting attorney of the proper county, provides that he shall subscribe his name thereto and indorse thereon the names of witnesses. The next section provides for the verifications of all informations, and for joining of different offenses and different degrees of the same offense in one information in like manner as could be joined in one indictment. The sixth section empowers the court to direct the prosecuting attorney to file the proper information in certain instances. We do not entertain the shadow of a doubt

that the statute in question is ample to authorize a county attorney to file informations for felonies in proper cases, and to prosecute the accused thereunder. (*State v. Miller*, 43 Neb., 860; *Korth v. State*, 46 Neb., 631.) The trial of the accused upon the information of the county attorney did not contravene section 3, article 1, of the constitution, which declares that "No person shall be deprived of life, liberty, or property without due process of law," since under and in pursuance of section 10 of the same article the legislature has authorized prosecution of offenses by information.

The ninth paragraph of the defendant's plea in abatement alleged that he had not had a preliminary examination touching the offenses charged in the information, and that he had not waived the same. To this averment the state replied, admitting that the defendant did not have a preliminary examination, denying each and every other allegation in said paragraph of the plea, and averring that the accused waived his right to a preliminary examination. The defendant demanded a trial by jury upon the issue tendered by the ninth paragraph of the plea in abatement, which was overruled, and the trial court found that the defendant had waived a preliminary examination before the examining magistrate, and accordingly overruled said paragraph of the plea in abatement. The denial of a trial by jury to determine whether the right to a preliminary examination had been waived by the prisoner is assigned for error. Conceding, for the purposes of this case, that the accused was entitled to have this question passed upon by a jury, yet the refusal of his request did not work a reversal of the judgment of conviction. Doubtless he could have waived the calling of a jury to pass upon that proposition had he so desired, since the statute does not specify how it shall be determined. It follows that the denial of a jury trial upon the issue in question was unimportant, as the defendant was in no manner prejudiced thereby. Suppose the uncontradicted testimony before the trial court had

Bolln v. State.

shown that a preliminary examination upon the crimes charged in the information has been waived by the defendant, he would not have been injuriously affected by the refusal of a jury to pass upon that portion of his plea, for had one been called the verdict must necessarily have been the same as the finding of the court. Error cannot be presumed, but must appear affirmatively to justify a reversal of a cause. The testimony adduced relating to the plea in abatement was not brought into the record by a bill of exceptions, nor is the transcript of the proceedings in the magistrate's court before us, therefore we are unable to determine whether the court below erred in denying the accused a trial of his plea in abatement by a jury. The issue of fact joined on this plea in abatement, involving as it did the question of a record in the case at bar, could be properly determined by the court without the intervention of a jury. This view is not in conflict with *Arnold v. State*, 38 Neb., 752, and *Smith v. State*, 42 Neb., 356, in which cases it was ruled that the trial of an issue of fact tendered by a plea in bar can only be tried by a jury. Those cases lack analogy. They were predicated upon section 449 of the Criminal Code, relating to pleas in bar, which in express language requires the issues raised by such pleas to be determined by a jury. The provision of said section is mandatory, and the right thereby accorded the prisoner cannot be waived by him, while the statute and constitution alike are wholly silent as regards the trial of an issue of fact joined upon a plea in abatement.

Error is predicated upon the refusal of the trial court to sustain the defendant's motion to quash the several counts of the information. It is insisted that each count, except the last one, is bad because it did not conclude with the words "against the peace and dignity of the state of Nebraska." The rule sanctioned by long usage has been to conclude each count of an indictment or information with the words above quoted, but we have in this state no constitution or statute requiring it. In some

of the states, under a constitutional provision defining what an indictment shall contain, indictments have been held defective which omitted the usual formal concluding words. In the language of Clark, J., in considering the same question in *State v. Kirkman*, 104 N. Car., 911: "The conclusion 'against the peace and dignity of the king,' was held in England to be necessary in all indictments. No reason was assigned for it except that it had been customary. It furnished no light to the defendant, and its employment was not required by any statute. As every criminal offense is, in its nature, 'against the peace' its use is tautology, and, doubtless, originated in the rhetorical flourish of some ancient and forgotten pleader." By section 412 of our Criminal Code it is provided: "No indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings be stayed, arrested, or in any manner affected: First—By the omission of the words 'with force and arms,' or any words of similar import; or, Second—By omitting to charge any offense to have been contrary to a statute or statutes; or, Third—For the omission of the words, 'as appears by the record,' nor for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense; nor for stating the time imperfectly; nor for want of a statement of the value or price of any matter or thing, or the amount of damages, or injury, in any case where the value or price, or the amount of damages, or injury, is not of the essence of the offense; nor for the want of an allegation of the time or place of any material fact, when the time and place have once been stated in the indictment; nor that dates and numbers are represented by figures; nor for an omission to allege that the grand jurors were impaneled, sworn, or charged; nor for any surplusage or repugnant allegation when there is sufficient matter alleged to indicate the crime or person charged; nor for want of the averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend

to the prejudice of the substantial rights of the defendant upon the merits." The object of the legislature in passing the foregoing was to prevent the administration of justice in criminal prosecutions from being hampered or impeded by useless technicalities or nice refinements. The statute has declared that no indictment shall be deemed invalid for any defect which does not tend to the prejudice of the substantial rights of the accused on the merits, nor for the omission "to charge any offense to be contrary to a statute or statutes." It is obvious that the omission from the several counts of the information of the usual formal conclusions does not render them bad. (*Smith v. State,* 4 Neb., 277; *State v. Kirkman,* 104 N. Car., 911; *Peters v. State,* 12 S. E. Rep. [N. Car.], 74; *People v. Fowler,* 25 Pac. Rep. [Tex.], 1110; *Alexander v. State,* 11 S. W. Rep. [Tex.], 628; *Stebbins v. State,* 20 S. W. Rep. [Tex.], 552.)

It is argued that the court erred in not sustaining the defendant's challenge for cause to the juror Charles Bentley. The *voir dire* examination of Mr. Bentley is in the record before us, which discloses that he had an opinion as to the guilt or innocence of the defendant, formed solely upon mere rumors and the reading of newspaper comments upon the crimes; that such opinion was not a settled or fixed one, but was conditional upon the truth of what he had heard and read; and, notwithstanding such opinion, he could render a fair and impartial verdict in the case, based solely on the law and the evidence. No substantial cause for the challenge of Mr. Bentley existed, since the opinion he entertained was not unqualified as to the guilt or innocence of the accused. (*Basye v. State,* 45 Neb., 261.) We now reiterate what was said in passing upon a similar question in that case: "If upon the whole examination of the juror it is manifest that the opinion formed by him from reading newspaper accounts of the alleged crime, or upon rumor, is merely hypothetical or conditional on the truth of the rumor or the newspaper reports read; that he has no settled opinion as

to the guilt or innocence of the accused; and that he can render a fair and impartial verdict upon the evidence adduced on the trial, under the instructions of the court, the juror is competent. * * * Under the statutes, the mere fact that a juror has formed an opinion from what he has heard or read does not disqualify him from acting nor make him incompetent to serve as a juror. It is only when the venireman has such a settled opinion, or the examination shows such a state of mind as will preclude him from returning a true verdict upon the evidence submitted on the trial, that he is disqualified. In other words, he is incompetent if he entertains an unqualified or unconditional opinion on the merits of the case, however formed, or an opinion of that fixed character which repels the presumption of innocence of the prisoner. The statute does not by express terms, nor by fair implication, disqualify one from serving as a juror who has read newspaper reports of the commission of the crime."

The errors assigned to the fifteenth and sixteeenth instructions will be considered together, as they present the same questions. Instruction 15 reads as follows: "You are instructed that if you find from the evidence, beyond a reasonable doubt, that the defendant was city treasurer of the city of Omaha, and if you further find beyond a reasonable doubt that the said city of Omaha, through its proper officer, or through a person authorized so to do, made a demand upon the defendant to settle and account to the said city of Omaha for funds received by the defendant during his term of office as such city treasurer, in the regular course of his business as such officer, and if you further find that the defendant neglected and refused to make settlement; and if you further find from the evidence, beyond a reasonable doubt, that there was any money received by the said Henry Bolln, defendant, as such city treasurer, such moneys being received in the regular course of business while the said Henry Bolln was treasurer of the said city of Omaha, and the said

money being the property of the said city of Omaha, such demand for settlement and such refusal to turn over to the person authorized by the city of Omaha to receive such money, if you find that the said defendant did receive and hold any money, the property of the city of Omaha, is *prima facie* evidence that the defendant did embezzle such money, as you find beyond a reasonable doubt that the defendant did receive for safe keeping, transfer, and disbursement of 'the moneys of the said city of Omaha, and which he refused and neglected to turn over and account for to the said city of Omaha." The sixteenth instruction differs from the above in that the words "school district of the city of Omaha" are substituted for the words "city of Omaha" in every place they are employed in said instruction 15. The criticism offered upon said instructions is that under section 124 of the Criminal Code the presumption of embezzlement does not arise from the failure of a public officer to account or make settlement for funds in his hands until the expiration of a reasonable time after notice so to do has been given him. Said section 124 of the Criminal Code, relating to the embezzlement of public moneys, *inter alia* declares that "any failure or refusal to pay over the public money, or any part thereof, by any officer or other person charged with the collection, receipt, transfer, disbursement, or safekeeping of the public money, or any part thereof, whether belonging to the state or to any county or precinct, or school district, or organized city or incorporated village in this state, or any other public money whatever; or any failure to account to, or to make settlement within a reasonable time after notice so to do, with any proper and legal authority of the official accounts of such officer or person, shall be held and taken as *prima facie* evidence of such embezzlement. And the refusal of any such officer or person, whether in or out of office, to pay any draft, order, or warrant which may be drawn upon him, by the proper officer, for any public money in his hands, no matter in what capacity the same may have been re-

ceived or may be held by him, or any refusal, by any person or public officer named in this act, to pay over to his successor any public moneys, or securities promptly, on the legal requirement of any authorized officer of the state or county, shall be taken on the trial of any indictment against such officer or person for embezzlement, as *prima facie* evidence of such embezzlement." By the foregoing the legislature has made either the failure of any public officer to account to, or make settlement with, the proper legal authority of his official accounts within a reasonable time after notice so to do, or any refusal of a public officer to promptly pay over to his successor any public moneys or securities on the legal requirement of any authorized officer, *prima facie* evidence of embezzlement. Both of the instructions under consideration omitted to state that a reasonable time must elapse after notice for settlement and accounting has been received by an officer before the law will raise therefrom any presumption of embezzlement. For this omission a reversal is asked. In the light of the facts before us, we think it should be denied. The record discloses that the defendant was the treasurer of the city of Omaha and *ex officio* treasurer of the school district of said city for two terms. Early in July, 1895, he resigned his office, and J. H. Dumont was appointed to fill the remainder of the official term, which expired in January following. A. G. Edwards was the duly elected and qualified successor of the latter. The defendant, on July 11, 1895, accounted to and paid over to Dumont, his successor, for $221,705.69, which was only a portion of the funds in his hands belonging to the city of Omaha and the school district of said city, and he had not at the time of the trial in the court below on May 9, 1896, accounted for or paid over to the proper officer the residue of the public moneys received by him. On the 30th day of January, 1896, A. G. Edwards, the then treasurer of the city of Omaha and *ex officio* treasurer of said school district, for and on behalf of said city, as well as said school district, and in

pursuance of instructions from proper officers, made a written demand upon the defendant that he pay to said Edwards all moneys received by the defendant by virtue of his office from whatever source belonging to the city of Omaha and said school district, respectively. To this request and demand the defendant did not comply, but replied: "I cannot pay you, Mr. Edwards." No request for further time in which to account and make payment was ever suggested by the accused; but his refusal to make settlement and payment was unequivocal. The information under which the trial was had was not filed until April 2, 1896. In view of the facts detailed, and the further fact that the defendant had deposited moneys of the city and school district respectively in certain banking institutions, and had paid out several thousand dollars of the public funds without warrants or vouchers therefor, the defendant was not prejudiced by the giving of the instructions assailed. More than a *prima facie* case of embezzlement was made out by the uncontradicted evidence adduced on the trial. The statute requires a public officer to pay over to his successor all public funds unaccounted for to his successor promptly upon legal demand being made upon him therefor.

The next contention is that the verdict is not warranted by the evidence. The fourth and ninth counts of the information upon which the defendant was convicted charge the embezzlement of the sums of $2,500 and $3,000, respectively, belonging to the school district of the city of Omaha. It developed on the trial that the defendant had on deposit with the Omaha Loan & Trust Company Savings Bank about $10,000 of the funds belonging to the school district of Omaha, and of which amount he withdrew from said bank on July 28, 1893, the sum of $2,500. This he received in cash, and the evidence on behalf of the state tends to show that he never charged himself therewith, nor accounted therefor, or for any part thereof, to the school district. The moneys came into his hands as their proper custodian, and he had

42

wholly failed and refused to account for or pay the same over to his successor upon demand. To establish embezzlement it did not devolve upon the state to show how or where the moneys were converted by the defendant to his own use. The proof adduced by the state in support of the ninth count is fully as convincing, and is ample to sustain the averments of said count. The state, by uncontradicted testimony, traced the $3,000 of the school money therein mentioned into the hands of the defendant, and he failed and refused to account for the same in any manner whatever.

The other count upon which there was a conviction, the eleventh, charges the defendant with the embezzlement of $100,000 of the moneys of the city of Omaha. The shortage of the defendant for both terms of city treasurer was proven by the state to be $115,188.66. This is conceded in the brief filed by his counsel, although in argument at the bar it was insisted that the larger portion of this amount was made up by charging the defendant twice with the sum realized from one sale of city bonds. An analysis of the evidence fully refutes this contention, and establishes that the defalcation of the defendant on account of city funds alone for both terms was over $100,-000. The point is made that a portion of the above shortage in the city funds occurred during the defendant's first term of office, and more than three years prior to the filing of the information against him. This feature of the case was passed upon by the jury adversely to the defendant under instruction eleven, given by the court on its own motion, which in clear and explicit language submitted to them that question for consideration. The evidence shows that the embezzlement in the case at bar consisted of a continuous series of acts, committed at different times, but with a common purpose, and hence constitute a single offense. (*State v. Reinhart*, 38 Pac. Rep. [Ore.], 822; *Brown v. State*, 18 O. St., 496; *Jackson v. State*, 76 Ga., 551; *Ker v. State*, 110 Ill., 627; *Gravatt v. State*, 25 O. St., 162; *Campbell v. State*, 35 O. St., 70.)

Moreover, the evidence is ample to establish that over $100,000 of the funds of the city of Omaha were embezzled by the defendant within three years prior to the commencement of this prosecution.

There was no error in refusing to admit in evidence the communications of Theodore Olsen, comptroller, to the city council, since they did not tend to show that the defendant was not guilty of embezzlement.

When the defendant turned over his office to his successor, Mr. Dumont, there was in the cash drawer, carried as cash, slips and memorandum checks, aggregating about $24,000, representing that amount of public funds which he had paid out to, and which were, carried as charges against, various persons, mostly city employes, and contractors with the city. The defendant offered to show that it had been the custom of the various city treasurers who had preceded the defendant in office to so pay out city funds. The offer was rejected, and such ruling is assigned as error. The fact, if it be a fact, that the money represented by said slips and checks in the cash drawer was paid out in pursuance of a custom with the knowledge of the city authorities did not make the transaction in question lawful. The disbursement of public funds in that manner was in violation of law, a practice in the highest degree reprehensible and constituted embezzlement, notwithstanding the transaction was openly done with the knowledge of the entire city government, and might be sanctioned by a custom or usage as old as the Mosaic Law.

Finally, it is argued that the defendant was not present in court when the jury returned their verdict. It is true the record does not affirmatively disclose that the prisoner was present at the time the verdict was received, nor does it appear he was not so present. The journal entry, however, does recite that Mr. Bolln was in court with his counsel when the jury were instructed, which was the same day the verdict was returned. His presence at the trial having been once shown by the record,

the presumption will be indulged that it continued until the end unless the contrary appears. (*Folden v. State*, 13 Neb., 328; *Dodge v. People*, 4 Neb., 220.)

We have with much care examined the voluminous record in this case, and have given every proposition argued in the brief for reversal careful consideration, and the conclusion is irresistible that the defendant has been accorded a fair and impartial trial, and no error which could have prejudiced his substantial rights having been committed, a judgment of affirmance will be entered.

AFFIRMED.