## COATS v. STATE.

No. A-11010.  Nov. 30, 1949.

On Rehearing Jan. 25, 1950.

(212 P. 2d 141; 214 P. 2d 455.)

A. L. Commons, Miami, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J.   The defendant, Raymond Gail Coats, was charged in the district court of Ottawa county with the crime of manslaughter in the first degree, in that:

"While engaged in the commission of a misdemeanor, to wit: the crime of reckless driving as defined by Tit. 24 [47], par. 92 [O. S. A.] and the crime of operating a motor vehicle while under the influence of intoxicating liquor as defined by Tit. 47, par. 93 [O. S. A.] * * * did operate said motor vehicle in such a manner as to cause said vehicle to overturn, from which overturning of said vehicle the said Elmer Jay Mericle did receive certain mortal wounds, from which said mortal wounds the said Elmer Jay Mericle did, on the 15th day of June, 1947, die * * *."

The defendant was convicted of manslaughter in the second degree, and given six months in jail and assessed a fine of $500 and has appealed.

Counsel for defendant presents two assignments of error:

I.   Error of law occurring at the trial.

II.   There was not sufficient evidence to warrant the verdict of the jury.

Under the first proposition counsel points out that the defendant herein was not indicted by a grand jury,

but that after a preliminary complaint was filed with and hearing had before the county judge, acting as an examining magistrate, that an information was filed in the district court of Ottawa county. It is contended such proceedings were insufficient and contrary to the Fifth Amendment of the Constitution of the United States, and violated the Fourteenth Amendment to the Constitution of the United States. It is argued that the question has not been settled by this court.

We find that the issues raised under the first assignment have been previously considered and settled by this court in an exhaustive opinion by Doyle, Judge (1909), in the case of In re McNaught, 1 Okla. Cr. 528, 99 P. 241. Also, the Supreme Court of Oklahoma considered the question in an opinion by Williams, Justice, in Ex parte McNaught, 1 Okla. Cr. 260, 100 P. 27. It would serve no useful purpose to quote the various constitutional provisions, Federal and State, involved, and to detail the reasons for holding that it is not necessary in this jurisdiction that a person be indicted by a grand jury as a basis for prosecution, in view of the well-reasoned cases cited, and which may be studied. We approve the rules of law announced, as well as the reasoning, in the McNaught cases, supra.

In the first McNaught case above referred to, this court held:

"The words 'due process of law' in the fifth and fourteenth amendments to the Constitution of the United States, and in section 7 of the Bill of Rights of the Constitution of Oklahoma, [Const. Art. II, Sec. 7] do not necessarily require an indictment by a grand jury in a prosecution by the state for the crime of murder committed after statehood.

\* \* \* \* \* \*

"The Constitution of Oklahoma (Const. Art. 2, § 17) authorizes prosecutions for felonies by information after examination and commitment by a magistrate without indictment by a grand jury. * * *

"The provision of the Constitution that provides for and authorizes the prosecution of felonies by information after the accused has had a preliminary examination before an examining magistrate, or having waived such preliminary examination (being section 17 of the Bill of Rights), is self-executing from the time of the organization of this state."

See, also, Buxton v. State, 37 Okla. Cr. 402, 258 P. 814.

The Fifth Amendment to the Constitution of the United States is a limitation upon the Federal Government and has no reference to state actions. Ex parte Whistler, D. C. Wis., 65 F. Supp. 40.

The Supreme Court of the United States has many times considered the principal question raised by defendant.

In Maxwell v. Dow, 176 U. S. 581, 20 S. Ct. 448, 449, 44 L. Ed. 597, the court held:

"A proceeding by information, instead of by an indictment by a grand jury, is not insufficient to constitute due process of law.

"The privileges and immunities of a citizen of the United States did not include the right of trial by jury in a state court for a state offense, or the right to be exempt from any trial in such case for an infamous crime, unless upon presentment by a grand jury.

"The adoption of the Fourteenth Amendment to the Federal Constitution has not had the effect of making all the provisions contained in the first ten amendments operative in state courts, on the ground that the funda-

mental rights protected by those amendments are, by virtue of the Fourteenth Amendment, to be regarded as privileges or immunities of citizens of the United States."

See, also, Bolln v. State of Nebraska, 51 Neb. 581, 71 N. W. 444; Id., 176 U. S. 83, 20 S. Ct. 287, 44 L. Ed. 382; Hurtado v. California, 110 U. S. 516, 4 S. Ct. 111, 292, 28 L. Ed. 232.

We therefore find no merit in defendant's proposition I.

It is necessary to summarize the evidence to properly consider the second proposition argued by defendant.

The evidence shows that the defendant was a miner, and working in the Blue Goose Mine No. 1 Eagle Picher, with Elmer Jay Mericle, Barney Greaves, Harold Grayson, A. J. Jones and Tex Anderson; that they "came out of the ground" at 4 o'clock on Sunday afternoon, June 15, 1947, took showers and changed clothes, and went to Wilson's Drive-In, and each drank two bottles of beer. They then went to Mendenhall's Drive-In, where they met A. J. Jones (who was driving his own car) and Ralph Grayson. Jones had part of a fifth of whisky which he took to defendant's car, and they all sat in the car and drank the whisky with cokes and 7-Up. They wanted more whisky, and went to Floyd's Tavern, and got another fifth. Most of the witnesses testified that they sat at the bar, and were served the drinks by the bartender.

Two sisters were in a car with Orville Hemann. They started out to look for A. J. Jones, and found him with the other boys at Floyd's Tavern. The girls both testified that defendant came out of the tavern with a bottle of whisky in his hand, and all three of them testified that he was drinking, and that the boys said they

were celebrating the defendant's anniversary. Hemann saw defendant take a drink, and talked with him about trading cars.

The boys who were riding with the defendant at the time of the accident were reluctant to testify against him. They all said he was not drunk, and most of them that they did not see him take a drink, although they admitted they were drinking. The county attorney claimed surprise at the testimony of two of these witnesses, and statements made by several of them just after the accident were introduced in evidence. The defendant testified that he had not taken a drink, was sober, and his testimony was entirely different from the statement made by him just after the wreck.

The defendant and the boys with him stayed at Floyd's Tavern about an hour, then started to Quapaw, in order that Tex Anderson might get some money from his sister there. They were driving east on U. S. Highway 66. There is a big curve to the north on 66, but the road goes on straight east and is known as "The Devil's Promenade." This road is gravelled. There were six boys in defendant's car when they left the tavern, three in each seat. Several of them testified that defendant was driving about 50 or 60 miles an hour. He failed to make the curve on Highway 66, hit the gravel, cut back on the slab, and turned over about twice. Mericle was in the front seat, opposite the defendant, who was driving, and was thrown out of the car and killed. No one else was seriously hurt.

While there was a conflict in the evidence as to defendant's drinking, the undisputed evidence shows that he was driving his car at such a rate of speed that he was unable to control it on the curve on U. S. Highway

66, and that the car turned over at least twice, killing one of the occupants, as recited.

The defendant was found guilty of the lesser degree of the crime charged, so that it is unnecessary to determine whether or not the evidence was sufficient to support the greater degree of the crime charged. Tit. 22 O. S. A. 837. We find that there is sufficient evidence in the record to support the verdict of the jury.

This court has held in Graham v. State, 80 Okla. Cr. 159, 157 P. 2d 758, 759:

"Where the evidence is conflicting the weight of the evidence and the credibility of the witnesses is for the jury, and Criminal Court of Appeals will not substitute its judgment for that of the jury where there is evidence reasonably tending to support the conclusion arrived at by the jury."

The rule has also been approved in Roberts v. State, 82 Okla. Cr. 75, 166 P. 2d 111; Parks v. State, 83 Okla. Cr. 70, 173 P. 2d 234; and Sadler v. State, 84 Okla. Cr. 97, 179 P. 2d 479.

By reason of the above, the judgment and sentence of the district court of Ottawa county is accordingly affirmed.

JONES, P. J., and BRETT, J., concur.

On Rehearing.

A. L. Commons, Miami, for Raymond Gail Coats.

Mac Q. Williamson, Atty. Gen., and James Reed, Co. Atty., Miami, for the State.

PER CURIAM. After again considering the record and the argument of counsel on rehearing, we have come to the conclusion that justice will be served by

modifying the judgment and sentence pronounced against the accused, from six months in the county jail and a fine of $500, to 90 days in the county jail and a fine of $250.

The judgment and sentence of the district court of Ottawa county is therefore modified to 90 days in the county jail and a fine of $250, and the judgment and sentence as thus modified is affirmed.

Mandate is ordered to issue forthwith.