Harry William **NUTTLE**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in
Error.

No. A–12341.

Criminal Court of Appeals of Oklahoma.

Oct. 31, 1956.

Emerson R. Phillips, Pawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The appellant in this case was convicted in the county court of Pawnee County on a charge of driving a motor vehicle while under the influence of intoxicating liquor. The jury being unable to agree upon the punishment to be assessed, left that to the court, who fixed punishment at confinement in the county jail for 30 days, and a fine of $200.

For reversal counsel sets out a number of propositions of error that he does not support by authority or seriously urge, and that we shall not take up space to consider. Counsel does not present his case under propositions of error as specified by the rules of this court. It would seem that it is defendant's contention that the evidence was insufficient to sustain the verdict.

The evidence on behalf of the State is hereinafter summarized.

. Claburn Burgess, highway patrolman who was stationed at Pawnee on July 19, 1955 testified:

"I was traveling toward Pawnee on State '18', when I came up behind the 1954 Chevrolet. At the time I first observed the car, and what brought my attention to the car, it was traveling on the left side of the road. Well, as I neared it, it pulled back to the right. In the first instance, it was on or about Black Bear bridge. It pulled back to the right side and then started back to the left, and at this time there was a car coming also from the opposite direction. Upon meeting this car Mr. Nuttle was on the left side of the road, and to avoid a collision, the other car had to pull up against the curb. I followed the car around the curve in order to stop it to get out of the danger zone. I turned the red light on Mr. Nuttle and he pulled off to the side of the road.

"Q. Then what took place? A. I got out of the patrol and opened the door of Mr. Nuttle's car and asked him to see his driver's license. He started fumbling around in his pockets, and then reached over to the glove compartment and got out an envelope and handed me a Social Security card. I told him 'No', that I wanted to see his driver's license, and then he handed me the title of registration to the car. At this time I asked him to get out. He did, and I reached in the envelope and got his driver's license. At this time I didn't know who Mr. Nuttle

was. After reading the driver's license, I placed him under arrest.

"Q. What was the condition you say he was in at the time? A. He was under the influence of intoxicating liquor, to the extent that it impaired his driving."

Officer Burgess further said that he asked defendant quite a number of questions and was never able to get a direct answer from him.

On cross-examination witness denied that he acted toward defendant in an overbearing manner or shoved him when he got out of his car. He did not give defendant any manual tests for drunkenness, or a drunkometer test, and did not remember that defendant demanded such tests. Witness admitted that the charges against defendant had been dismissed by the county judge and county attorney at one time for lack of evidence, and that there had been quite a bit of local newspaper publicity and witness had gotten the case re-filed (about three months later) and the then trial was the result thereof. Witness denied that he had bragged about getting the case refiled.

Marvin Duane Collier, radio dispatcher for the highway patrol, testified that he was with officer Burgess when he arrested the defendant. Said he:

"I observed Mr. Nuttle come on to the highway from the east side. He drove on the wrong side of the highway until he crossed the Black Bear bridge, and between the bridge and the railroad track he forced one car into the curb to keep from hitting him, and we observed in driving he couldn't keep the car on his side of the road. He weaved from one side to the other, and the red light was put on Mr. Nuttle, and he was stopped."

Witness also said that when officer Burgess asked to see defendant's driver's license that he handed him his Social Security card. Witness remembered defendant talking but could not remember what about. He said defendant was driv-

ing about 20 to 30 miles an hour when they stopped him.

J. W. Wadlow, jailer, testified that in his opinion defendant was under the influence of liquor when placed in jail by officer Burgess. He did not remember whether or not defendant tried to get the officers to give him an intoxication test.

The defendant testified and said that he had lived in Pawnee County all his life. He had driven a car on the streets of Pawnee for 30 years, and had never had an accident, and had never been arrested before. His wife died in 1925 leaving an infant daughter and two boys. The girl died a few years later, but the boys survived and served in World War II. He had been making a living driving a taxicab for 21 years. Concerning his activities on the evening of July 19, 1955 he said that he had a telephone at his home where he received calls for taxi service; that during the evening he got a call from the Mint Bar and picked up a Mr. Allen and took him to the "64 Tavern". He was to be there fifteen minutes and wanted defendant to come back, so defendant waited while Mr. Allen talked with a man, and during the time he drank one bottle of beer. After finishing the drive for Mr. Allen, defendant went on home and a Mr. Moore, a baseball fan, came to his home and wanted to be driven to the ball park, and defendant drove him there, and was directed to return at 9:30 P.M. He got back home at 7:50, drank a can of beer at home and went to Mrs. Gertie Barnes' home to watch a television show. He then returned to the ball park for Mr. Moore. He said that he noticed that he had a low left front tire, and got out with his flashlight and examined it, and decided that he could make it back to town. He said that he put the three-celled flashlight over the sun visor of his car, and as he crossed the railroad tracks near where the officers stopped him, the light fell to the floor and caused him to swerve the car; that he picked the light up from the floor and reached over to his right to place it in the glove compartment,

and just at that time a light was flashed on him and he stopped; that the officers ordered him out of his car and all this frightened him very much as he had been held up, struck and robbed about a year prior to this. He said that he told the officers that he was not drunk but that officer Burgess said, "Any time I say you're drunk, you're drunk". Defendant said that he was trembling like a leaf. He said they would not permit him to telephone. He denied that he had drunk any whiskey at all. He further stated that he had always been self-employed, that he did not possess a social security card and would not know how to go about getting one. He insisted that he tried to get the officers to give him a test for intoxication, but they paid no attention to him.

Mrs. Gertie Barnes testified that she had lived in Pawnee 49 years and had worked at Frank's Cafe 29 years. That the night of July 19, 1955, she phoned defendant, who was her neighbor, and invited him to come over and look at the $64,000 program on television, and that he came. They had tea and sandwiches and at 9:30 P.M. defendant left to go pick up Mr. Edgar Moore at the ball park and return him to town. He was supposed to then come and pick her up and drive her to her mother's home, but never got back that night on account of his arrest that she learned of later. Witness swore that she noticed nothing unusual in defendant's conduct and swore that in her opinion he was not drunk. On cross-examination witness said that she did not drink, and that all defendant had to drink at her house was tea. He left at 9:30 sober. She said that she did not approve of liquor, and would not allow it around her home.

Edgar Moore, a Pawnee Indian and described as a Christian, said that he went to defendant's home about 7:30 P.M. July 19, 1955 and got defendant to drive him to the ball park and to promise to return and get him at 9 or 9:30; that defendant returned for him at around 9:30; that they drove to the north gate and then started to town. He said that in his opinion de-

fendant was sober. He told about the flashlight falling from the car visor when they crossed the railroad tracks, and about the officers stopping them and arresting defendant. He corroborated defendant's testimony that they were a little rough and said that he did not know whether they scared Mr. Nuttle, but that they scared him. Witness said that he did not drink. He said that he had "gotten out of a sick bed" to come to court and testify for the defendant.

■■ From the above we see that there was a sharp conflict in the evidence as to drunkenness. That the defendant's car wobbled over the road is admitted, which entitled the officers, regardless of cause, to make an investigation to find out what the trouble might be. They smelled alcohol. Even one bottle of 3.2 beer causes an odor. From the record defendant was a talkative person. The officers concluded that he was drunk. It might be argued that two bottles of 3.2 beer over a three-hour period would not make a person drunk. Be that as it may, one bottle is one too many in a situation such as defendant found himself. The court properly instructed the jury on the issues and though one juror would not sign the verdict and they could not agree on the punishment, five did agree that defendant was guilty as charged. It is not the function of this court to weigh the evidence. Landon v. State, 82 Okl.Cr. 336, 166 P.2d 781; Coats v. State, 90 Okl.Cr. 217, 212 P.2d 141, 214 P.2d 455; Ratcliff v. State, Okl.Cr., 289 P.2d 152.

■ Nevertheless, in the spirit of fairness and in view of the fact that this defendant has a record of over 30 years of driving without an accident, that this is the first time he has ever been charged with a crime; that he was driving very slowly and was not involved in a collision, by reason of the facts stated we think the judgment should be, and it hereby is modified from a jail sentence of 30 days to 10 days, and a fine of $200 to a fine of $100; and as thus modified, the judgment is affirmed.

JONES, P. J., and BRETT; J., concur.