**Fred PIERCE, Plaintiff In Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A–13041.**

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1961.

Rehearing Denied June 15, 1962.

Willoughby & Cannon, Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Fred Pierce. Pierce was charged in the district court of Pottawatomie County, Oklahoma by information with the murder of Daniel Martin, allegedly committed on July 23, 1960. He was tried by a jury, convicted of manslaughter in the first degree and his punishment fixed at 25 years in the state penitentiary. Judgment and sentence was entered on the verdict, from which this appeal has been perfected.

A brief statement of the facts will be enlightening. The defendant was custodian and bus driver of the St. Louis consolidated school in St. Louis, Oklahoma. He was the father of seven children, including a 16-year old daughter, Ethyleen, who became enamoured of Daniel Martin, a schoolmate. It appears the school superintendent had admonished Ethyleen Pierce and Daniel Martin concerning their attentions and affections one toward the other in the corridors and class rooms. He had so advised Mr. Pierce.

It further appears that Mr. Pierce, as the bus driver, accompanied a spring outing school picnic to Turner Falls. There he saw conduct between Daniel Martin and his

daughter of which he did not approve. These actions were holding hands in school, and Martin was seen once at the Falls with his arm around Ethyleen. Because of these conditions and actions, the defendant forbade his daughter to have any further association with Daniel Martin. He also told Martin that he would not allow his daughter to see him any more. Martin, the record shows, told the defendant he was not smart, and that he was crazy. At no time after the Turner Falls trip did the deceased have any dates with Ethyleen. On July 23 in Saint Louis, Oklahoma, Martin saw Ethyleen and she told him she did not wish to see him again.

On the evening of July 23 Martin came in a Chevrolet automobile to the Pierce home to see Ethyleen about 7:30, and was ordered off the premises. Again the defendant was told he was crazy. Martin told the defendant he would return for his daughter. He did return about 8 P.M., making three circles in front of the Pierce home without stopping. He then returned a short time later, and got out of his car. When the defendant heard the car door slam he went to the screen door and opened it. Defendant testified that Martin was asked not to come to his home, and Martin told him to get his shot gun, that he was "coming in over me and get her." Then the defendant reached for his gun and told Martin to stop, but he kept coming. Defendant testified he thought he saw a flash he believed was a pistol, and he began to fire. Apparently decedent was unarmed, and the bright object was his wrist watch. The defendant's own testimony was sufficient to sustain the conviction. It presented a question for the jury, and for its sole determination. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479.

Dr. Rudolph Eyerer conducted a post mortem examination. At the trial he appeared by training and experience to be preeminently qualified. He was a licensed physician of the State of Maine. He was educated in Berlin and Munich, Germany, receiving his doctor's degree in 1951. In 1952 he commenced his training in Pathology which he pursued for five years in Beverley Hospital, in Massachusetts, one year in Boston Lying-In Hospital, and two years in Salem Hospital in Salem, Massachusetts. Thereafter he accepted a position as an assistant professor in Pathology at the University of Oklahoma Medical School. He related that he had conducted from 800 to 1000 autopsies in the course of his practice. He was, at the time of his testimony, the director of the Oklahoma University Pathological Training School, and laboratory, and in conjunction with Dr. Jacques was conducting medico legal autopsies. He testified he conducted such an autopsy on the body of Daniel Martin.

The doctor's qualifications were attacked as an expert. It was contended he was not qualified by admission to practice medicine in Oklahoma. That is not an essential to testimonial expertness.

In Bingham v. State, 82 Okl.Cr. 5, 165 P.2d 646, this Court said:

"An expert witness is one possessed of scientific knowledge acquired by study or practice or by both study and practice, and is, ordinarily, a person who has experience and knowledge in relation to matters which are not generally known to the people."

Under this rule Dr. Eyerer possessed in abundance those qualities required by the law for expertness. Miller v. State, 9 Okl. Cr. 255, 131 P. 717, L.R.A.1915A, 1088.

In Pruitt v. State, Okl.Cr., 290 P.2d 424, 425 (Cert. denied 351 U.S. 913, 76 S.Ct. 703, 100 L.Ed. 1446) we said:

"The general rule is that the question of competency of a witness to testify as an expert is largely a matter of discretion for the trial court and it requires clear proof of error to warrant a reversal by the appellate court on such matters."

The trial judge did not abuse his discretion in permitting Dr. Eyerer to testify as an expert in this case. The very fact that the State of Oklahoma retained him on the faculty of Oklahoma University Medical

School is evidence of its belief in his expertness, which the trial court did not ignore. His abundant training in his field fitted him pre-eminently for his work in this case as an expert.

Dr. Eyerer's testimony disclosed his autopsy revealed several bullet holes in the Martin boy's body. He made x-rays and located the bullets, tracing their course in the body. He testified there were powder burns on the body, indicative of close range firing, as close as three inches. This was a matter which Dr. Eyerer could testify concerning because of his qualifications as a pathologist and his familiarity with powder burns. He did not have to be a ballistic expert to be competent to testify concerning powder burns.

The doctor testified he found seven openings in the body, six of which were bullet penetrations and one made by the embalmer. After describing the several wounds, he testified the cause of death was the wound to the left of the left nipple, the pellet inflicting this wound, he said, went through the heart. He also testified that one bullet penetration was from the back, indicating the defendant fired after the decedent was in flight from the scene. A photograph taken after the killing and before removal of the body indicates he fell face down away from the house, and indicative of the fact that he was moving away from the house in flight when he was shot in the back.

▇▇▇ A further objection to Dr. Eyerer's testimony was that in rebuttal he was permitted to testify a second time at great length as to the shot in the back. It appears this was repetitious, as set forth above, it had been covered in chief. It was offered by the state, as the county attorney read into the record, to rebut the testimony of Benny and Fred Pierce that no shots were fired after the Martin boy turned. It is clearly apparent that this matter had already been covered in the state's case in chief. The two cases relied on by defendant in this regard lay down the rule as follows:

Corliss v. State, 12 Okl.Cr. 526, 159 P. 1015:

"It is the duty of counsel for the state to introduce the testimony available to establish the charge against the defendant at the bar in the hearing in chief. The court should not permit a rehash of such testimony under the guise of rebuttal. Counsel for the state have no more right to reserve the principal testimony and introduce it under the guise of rebuttal nor to rehash testimony introduced in chief under the guise of rebuttal, than the accused would have to reintroduce his testimony after the state has closed the rebuttal. In a strict sense, only such testimony which goes to contradict or rebut something proved by the defendant is entitled to be introduced in rebuttal. The discretion of the trial court allowed by the law in this jurisdiction in this respect should always be exercised with these rules of fairness in view."

And see Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451.

These cases correctly state the rule, and it was an abuse of discretion to permit a rehash of the matter under this record. But the evidence of guilt is so clear and convincing we cannot say it requires a reversal of the case. At most, under this record, it could only warrant modification of the sentence.

A considerable part of the evidence now questioned was admitted without objection and preservation of the proper record. However, in consideration of the whole record, we are of the opinion that this defendant, the father of seven children, was acting in what he believed was the necessary defense of himself and his home, though he did kill in the heat of passion, and not under excusable or justifiable conditions. The jury did not believe the killing was at all necessary, and the evidence supports its verdict in that regard. 22 O.S. 1951 § 1066; Wingfield v. State, 89 Okl.Cr.

45, 205 P.2d 320; Jackson v. State, Okl.Cr., 293 P.2d 377; Sandy v. State, 94 Okl.Cr. 80, 231 P.2d 374; Bunn v. State, 85 Okl.Cr. 367, 190 P.2d 464.

However, it is altogether possible that the defendant may have been prejudiced by the repetitious rebuttal. Hence, in keeping with fair play and the ends of justice, we are of the opinion that the judgment should be modified from 25 years to 20 years imprisonment.

As so modified, the judgment and sentence of the district court of Pottawatomie County is affirmed.

NIX, P. J., and BUSSEY, J., concur.