## LOMBNESS v. STATE.

No. A-11654. April 2, 1952.

(243 P. 2d 389.)

Herbert K. Hyde, Lee Williams, and Carroll Samara, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J. Here Sam Lombness was charged by information filed in the district court of Oklahoma county with manslaughter in the first degree; the jury found him guilty but left his punishment to be fixed by the court, who assessed the penalty at eight years imprisonment in the State Penitentiary. The case is here on appeal.

The record and petition in error ·were filed herein on October 19, 1951, and a brief was due to be filed sixty days thereafter, but none has been filed to date. On January 3, 1952, the case was set down for oral argument for February 13, 1952, but no one appeared.

By reason of the nature of the charge and irrespective of the fact that we are required only to search the record for fundamental error, Cofer v. State, 94 Okla. Cr. 284, 234 P. 2d 959; Yoes v. State, 90 Okla. Cr. 151, 211 P. 2d 1022, we have read the evidence with painstaking care, and have studied the entire record and considered the grounds for error set out in the motion for new trial and in petition in error. We find no fundamental error.

The state produced two eyewitnesses who observed the truck that defendant was .driving as it proceeded south along Walker· Avenue in Oklahoma City. Jesse Shores and wife Hazel Shores were standing on the northeast corner of Southwest Sixth and Walker waiting for a bus.· It was around 6:30 p.m. on Sunday, February 19, 1950; they saw a pick-up truck, army model, being driven south at a rapid rate of speed. Then they heard it hit the curb of the southwest corner of Southwest Sixth and Walker, and observed the truck plunge to the parking, and Jesse saw a man hurled into the air as if he had fallen out of the truck. He stated that cars were proceeding north and south along Walker Avenue, but at the time no car was proceeding either east or west along Southwest Sixth at the intersection with Walker. Witness crossed the street and viewed the body of a man who had been struck by the pick-up truck, and who was apparently dead. He saw the defendant, who admitted that he was the driver of the truck. Witness thought defendant acted peculiar.

W. A. Williams, accident investigator for the Oklahoma City police department, and F. C. Daniels, his partner, investigated the accident. They identified the pick-up involved in the accident as an old '42 Dodge truck, army style. It was sitting 56 feet from the south curb of Southwest Sixth and Walker. Williams saw defendant at the scene and defendant stated that he had driven the truck. Defendant did not have a driver's license. The officers arrested Sam Lombness for not having a driver's license, and for driving a motor vehicle while under the influence of intoxicating liquor. Defendant admitted to the officers that he had drunk four bottles of beer. It was this officer's opinion that defendant was intoxicated at the time of the accident, which proved fatal to Louis William Lynch, who was struck by the truck driven by defendant.

Lt. Stiles E. Gunn of the Oklahoma City police department testified that he had been with the department over 20 years, that he was a graduate of the Northwestern University Traffic Institute and that he had received about forty hours training in the fundamentals of chemistry and the physiological effect of alcohol on the human body, at the University of Oklahoma School of Medicine. He studied under Dr. Harger, inventor of the Drunkometer, when at Northwestern University. He stated that the National Safety Council, the Amrican Medical Association, the American Bar Association, the Federal Bureau of Identification, the International Association of Chiefs of Police, and others, had endorsed the Drunkometer test. Witness further stated that in March, 1947, ·the Oklahoma City Police Department acquired a Drunkometer. That to be sure of its reliability they turned the instrument over to the Dean of the Oklahoma School of Medicine, who kept it a number of months to conduct experiments and make tests to prove its reliability. He stated that the instrument was found to be accurate. The police department then conducted around 500 tests on drunks, and people who only had onion on the breath or sensen, or garlic, or people who had taken whiskey in the mouth and then spit it out, or had used a mouth wash. Witness stated that he had conducted a school within the Oklahoma City Police

Department on chemical tests for intoxication and the physiological effects of alcohol on the human body as shown by the Drunkometer, and taught the use of the Drunkometer. He further testified that when a person shows as much as 15/100ths of one per cent of alcohol in his blood by weight, that he is definitely under the influence of alcohol to such a degree that he has lost that normal ability to control himself or to control his actions as would a normal person.

Lt. Hopper of the Oklahoma City police department testified that he had been with the department over 20 years; that about 7:20 the evening that Sam Lombness was arrested, that Lombness was brought to him to take the Drunkometer test. Said he:

"The officers brought the man in and asked me to give him the Drunkometer test. I explained the Drunkometer machine to the gentleman and then told him that we would give him a test if he would consent to it, to blow up the balloon to ascertain how much alcohol he had in his blood stream. He did not object. He blew up the balloon and I gave the test."

He further testified that no threats were made or promises made, and that the test was strictly voluntary. Witness had the Drunkometer in court and explained in detail how it operated. He stated that it showed that defendant had 15½ hundredths of one per cent alcohol in his blood stream. Witness further testified that as a booking officer he had come into contact with many drunks. He stated: "Well, his eyes were discolored to a degree. He was uncertain in his speech. His tongue was more or less thick. He talked with a slur. I observed him walking, and he staggered." Witness gave it as his opinion, without reference to the Drunkometer test, that defendant was under the influence of intoxicating liquors.

Dr. Harold M. Shoemaker, Professor of Pharmacology, University of Oklahoma School of Medicine, testified concerning the reliability of the Drunkometer test for determining the amount of alcohol in a person's blood stream. He gave it as his expert opinion that a person shown to have 0.155 per cent of alcohol by weight in his blood stream would show definite effects of alcohol. He stated that the amount of alcohol would slow such person's thinking to a marked degree; that he would have a slurring of his speech and a staggering gait; not very marked, but a definite loss of muscular coordination, and loss of control of his movements. He stated to get 0.155 per cent by weight of alcohol in one's blood, he would have to consume six or eight ounces of 100-proof whiskey, or approximately twelve bottles of 3.2 beer.

The defendant produced six witnesses to testify to his good character. It was developed that he was employed by Swatek Construction Company as a mechanic and bulldozer and ditching machine operator, and made calls from company headquarters to jobs to make emergency repairs on motor equipment. He had a good reputation for being a quiet, peaceable and law-abiding citizen.

Defendant testified in his own defense, stating that he was 46 years of age, was married, had never been arrested before, but had paid a number of parking tickets. He stated that the accident happened about 6:30 p.m. on Sunday, February 19, 1950. That on the Saturday night preceding that, he and his wife attended an American Legion dance, and that he and a friend by the name of Merle Koch purchased a pint of whiskey apiece and that they and others drank the whiskey during the course of the dancing. He did not get home until some time Sunday morning. He was called out to go to Britton to haul a bulldozer from Britton to Thirty-sixth and Santa Fe, and to move other heavy equipment from Britton to Nichols Hills. He and Merle Koch worked that day and defendant got off from work at 4:30 p.m., and he and Merle Koch went to Fifth

and Western and drank a bottle of beer, and later defendant stopped at California and Walker and got a sandwich and drank another bottle of beer. Defendant admitted that he had been driving a car since in 1920 and had never had a driver's license except for a period when he was in the army. He stated that he had been too busy to get one. Apparently his employer had not seen fit to check up on this, though defendant testified to driving various motor vehicles for his employer.

Witness stated that on leaving the cafe he started to drive home, and was heading south on Walker Avenue. He was asked by his attorney:

"Why didn't you stop out here in the center of the street? A. Well, I was —there was a car coming from the west, going east, which never stopped, sir, and I tried to cut to the right to miss him and just at that time the truck started shimmying and I tried to put the brakes on and I didn' have no brakes."

He stated that when he saw the car coming from the west that he was about 20 or 25 feet north of the intersection of Southwest Sixth and Walker, but that when he went to put on his brakes that he did not have any, though he stated that just previously his brakes had worked. He admitted that he hit the south curbing of Southwest Sixth, blew out his front tires and mounted the parking area and proceeded south 56 feet. He claimed that he was not driving over 20 to 25 miles per hour; that when his car jumped the curb his steering mechanism went bad and he could not get the car to turn and he hit a man and killed him. He was then asked how many bottles of beer he had drunk just previously to the accident, and he answered four bottles. He then later stated that he and his friend Merle Koch had four bottles together, and he drank a bottle later when eating a sandwich. Defendant admitted voluntarily taking the Drunkometer test.

On cross-examination witness testified that he and Merle Koch only drank one bottle of beer apiece. He did not explain why it took him two hours to drink only two bottles of beer, and eat one sandwich.

The State called F. C. Daniels in rebuttal, who stated that he was accident investigator for the Oklahoma City police department, that on Sunday, February 19, 1950, he and Officer Bill Williams investigated a wreck at Southwest Sixth and Walker, that he found a Dodge pick-up involved in a collision with the curb and a man: that he checked the steering and found it is good condition; that the lights were all right, and that the "the brakes had more than enough clearance and were what we consider to be all right. The law calls for at least an inch clearance, and we had more than that."

This completed the evidence. The court gave the instructions that properly defined the issues. None of the instructions were objected to.

The court recently in the case of Toms v. State, 95 Okla. Cr. 60, 239 P. 2d 812, approved the Drunkometer test where the accused voluntarily took the same.

We do not find error in the record. The evidence was ample to sustain the verdict of the jury, and the judgment entered by the court. . This court has uniformly held that where the evidence is conflicting, the weight of the evidence and the credibility of the witnesses is for the jury, and that this court will not substitute its judgment for that of the jury where there is evidence reasonably tending to support the conclusions reached by the jury. Sandy v. State, 94 Okla. Cr. 80, 231 P. 2d 374; Deskin v. State, 94 Okla. Cr. 107, 230 P. 2d 939; Hoover v. State, 94 Okla. Cr. 227, 233 P. 2d 327; Queen v. State, 35 Okla. Cr. 412, 250 P. 935.

The case is affirmed.

BRETT, P. J., and JONES, J., concur.