# COLLINS v. STATE.

No. A-11730. March 11, 1953.

(255 P. 2d 292.)

Moore & Fitzgerald, Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Moses A. Collins, was charged by an information filed in the district court of Payne county with the crime of murder; was tried, found guilty of manslaughter in the first degree by verdict of the jury, who were unable to agree upon the punishment and left it to be fixed by the court. Thereafter, the defendant was sentenced to serve a term of 40 years' imprisonment in the penitentiary and has appealed.

Two propositions are presented on behalf of the accused. First, the court erred in overruling defendant's motion for a mistrial when the county attorney read another and separate information for a crime at the time of his opening statement to the jury. Second, the punishment assessed was excessive.

The record discloses the following in connection with the first assignment of error:

"By the County Attorney: Gentlemen of the Jury, this is an Information or the statement of the charges against the defendant Moses A. Collins. Max E. Sater, County Attorney of Payne County, State of Oklahoma, under and by virtue of the authority vested in him as County Attorney, gives this Honorable Court to know and be informed in the name and by the authority of the State of Oklahoma, at the July A.D. 1951 term of said court, that at and in the County

of Payne and State of Oklahoma, on the 12th day of November, 1950 Moses A. Collins, then and there being did then and there commit the crime—

"I beg the Court's pardon.

"Mr. Moore: Comes now the defendant above named and moves the court to grant a mistrial for the misbehavior of the County Attorney in proceeding to read the information of another crime charged against the defendant above named.

"By the Court: Let the record show that no statement of the nature of the crime or anything further being said, the motion is overruled and exception al-/lowed."

Counsel has set up this assignment of error in their brief and merely made the allegation that it prejudiced the defendant in the eyes of the jury without specifically pointing out why it would constitute prejudice. There is not enough in the record to enable the court to determine whether the county attorney was referring to an information charging the accused with another crime, or whether there was merely an erroneous allegation in the information as to the date of the alleged homicide. There was ample evidence of the guilt of the accused. In fact, under the testimony of the defendant, as will be hereinafter related, the jury would certainly have been under obligation to have found him guilty of manslaughter. Since the jury did not fix the punishment, but left the same to be fixed by the court, we do not believe there is any justifiable cause for complaint on account of this alleged error.

In connection with the second assignment of error, we shall briefly review the evidence. The proof of the state showed that on Sunday night, April 1, 1951, the defendant shot and killed his former wife, Mildred Collins, in the presence of her two sons, Virgil and Vernon Jacobs, at a small 3-room home occupied by the deceased. The proof showed that the deceased and her mother, together with her two sons, attended church services, that the mother of deceased lived just a short distance from the deceased and deceased stopped at her house to visit a few moments after the church service, while her two sons, aged 14 and 12 years, respectively, went on home to go to bed.

Each of the sons testified that shortly after they reached home, the defendant came into their house and sat down in the front room, that the two boys went to bed but did not go to sleep, that the deceased came home about 15 or 20 minutes after the defendant had arrived. The deceased and defendant commenced to quarrel; that they talked some in the kitchen and then went back in the living room; that the defendant got mad and pulled a gun; that when the boys saw this, they started to get out of the bed and defendant ordered them to remain in bed, that defendant pointed the gun at Mrs. Collins and she grabbed it and it was discharged into the floor; that she turned loose of the gun and the parties commenced talking again, that the boys' mother ordered the defendant to leave the house and she walked to the door and started to open it; that the defendant said, "Don't you dare open that door or holler or I'll blow your brains out." That Mrs. Collins reached for the door and defendant fired his gun, striking her in the neck and causing her to immediately fall to the floor. The defendant then shot himself through the arm and ran out the door. The boys immediately ran to their grandmother's house and she and the neighbors quickly gathered. Mrs. Collins was removed to the hospital and died on April 6, 1951, from the effects of the gunshot wound.

The doctor testified that the bullet entered her neck just above the collar bone and ranged downward slightly, partially severing the spinal cord, which caused paralysis and her subsequent death.

The defendant escaped to Kansas and was returned by his relatives a few days after the shooting occurred. The mother of the deceased and Soprano Davis gave corroborative testimony. Mrs. Davis testified that the defendant came to her house that night and said, "Well, I killed Mildred." That she said, "What did you do that for, what did you go over there for?" And defendant said "Well, I went over there to let her know she couldn't do me like that."

The defendant was the sole witness who testified for the defense. He testified that he was 44 years of age and married the deceased in July, 1943; that at the time she had two sons by a former marriage; that he had some trouble with his wife over her mother and that she stuck an ice pick in him one time; that in October, 1950, she obtained a divorce from him which he did not contest; that on the night of the homicide he went to her house to try to talk her into going back with him so that they could live there in the home together. His testimony as to the occurrence at the house was substantially the same as that given by the two sons of the deceased. He said they argued in the kitchen and then went back to the front room. He testified concerning his pulling the gun and her grabbing the pistol and the bullet going into the floor. The defendant then testified as follows:

"Q. What did she do after that bullet went off in the floor? A. She turned and went to the front door. Q. What did you say to her? A. I told her not to go out that door to call none of the law, that if she did I was going to shoot her. I did that to scare her. Q. Did you intend to shoot her at the time you said that? A. No, sir, I didn't. I intended to shoot close to her to scare her. I didn't intend to hit her. Q. Where did that bullet strike her? A. I don't know, sir. Q. Did you realize you hit her after you shot the gun? A. No, sir, I didn't, till she had fell. After she had fell I discovered I had shot her, pulled the trigger and the bullet hit her. Q. What did you do? A. I figured then that it was my last chance, I just turned the pistol on myself and pulled the trigger and it fired."

On cross-examination, he testified that he got the pistol which was used in the killing from Calvin Jackson two or three days before the shooting occurred but that Jackson did not know that he had obtained it. He further denied having ever abused his wife or shot at her on another occasion.

In rebuttal, the mother of the deceased testified that on another occasion the defendant had struck the deceased on the side of the head with a pistol and had shot at her and that the officers were called on account of the disturbance.

It is the rule of this court not to interfere with the judgment and sentence pronounced against one convicted of a crime on account of the alleged severity of the punishment unless we can see from an examination of the record that the sentence was so excessive as to shock the conscience of the court and it is clearly evident that the sentence which was given was prompted by partiality, passion or prejudice. Certainly we cannot conclude from this record that a sentence of 40 years under the circumstances hereinabove related was prompted by partiality, passion or prejudice. The defendant went to the home of the deceased armed with a deadly weapon. He pulled the pistol without provocation and discharged it at the deceased. Under his own testimony he said that he wanted to fire it as close to her as he could, but not to hit her, merely to scare her. His reckless disregard for human life even under his own testimony was sufficient to support a conviction for manslaughter in the first degree. Under the evidence of the state, the killing was premeditated and a conviction for murder would have been justified.

The judgment and sentence of the district court of Payne county is affirmed.

POWELL, P. J., and BRETT, J., concur.