Roy William ARMSTRONG, Plaintiff in
Error,

v.

The STATE of Oklahoma, Defendant in
Error.

No. A–12315.

Criminal Court of Appeals of Oklahoma.

Aug. 1, 1956.

Appeal from the County Court of Okmulgee County; Jack Scott, Judge.

Harland A. Carter, Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Roy William Armstrong, plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the county court of Okmulgee County with the offense of operating a motor vehicle upon a public highway while under the influence of intoxicating liquor; was tried before a jury, convicted, and his punishment fixed at confinement in the county jail for ten days. When advised by the court that they would also be required to fix a fine in connection therewith, the jury retired and added a "$25.00 fine." 47 O.S.A. § 93.

In his brief defendant says that the case should be reversed:

"(1) Because the verdict of the jury is not supported by the evidence, is contrary to the law in such cases, and is not supported by either. (2) Because the intoximeter test given by the witness P. L. Wood, over the objections and exceptions of the defendant, showed that the degree of intoxication was 0.11, which clearly showed that the defendant was not intoxicated as shown by the testimony of P. L. Wood."

Counsel summarizes his petition in error by saying:

"The case herewith presents purely the scientific question of whether or not the reading of the intoximeter as to the alcoholic blood content by weight of the defendant shall be the prevailing evidence as to intoxication, or whether the State be permitted to bolster the reading of the intoximeter in order to obtain a conviction."

Thus the issues are simplified and eliminate the necessity for a detailed summary of the evidence of the various witnesses.

We find that the State used nine witnesses in making out its case. As briefly as may be, the State's evidence developed that Norman Hunter, agent of the State Crime Bureau, accompanied by his wife and mother, was driving north on Highways 75 and 62 between Henryetta and Okmulgee, and about eight miles south of Okmulgee he passed a tavern and noticed a furniture van pull out of the parking space and up to the edge of the slab and stop, and Hunter went on by. About three miles south of Okmulgee witness noticed two highway patrolmen working a motor wreck, but drove on. He then noticed a truck following with lights blinking and the driver passed on around witness and witness said he heard profane language, that the driver was cursing him; that the truck whipped on by and got off the slab and stopped. Witness said that he then pulled off immediately behind the truck, being the same furniture van he had first seen drive onto the highway in question; that the driver got out and almost fell down and then got hold of the side of the truck and worked his way down its side, and acted as if drunk; that the driver, who is the defendant in this action, commenced to bawl witness out for passing the scene of an accident without stopping. Witness claims that he showed defendant his identification card and informed him that he was under arrest; that he took hold of defendant's arm to lead him back to the car of witness; that defendant jerked loose and swung at witness, whereupon witness had to knock defendant down twice to subdue him. Witness could smell liquor on defendant. He handcuffed defendant and

took him back to the highway patrol officers and turned him over to them on the charge subsequently filed.

The two highway patrolmen to whom officer Hunter had delivered the defendant the night of the arrest, July 23, 1955, testified, as did the sheriff of Okmulgee County, a deputy, the jailor and another, who were at the Okmulgee County jail when the defendant was incarcerated. All gave it as their opinions that the defendant was intoxicated. In fact, O. L. Rauch, highway patrolman, said that after officer Hunter delivered the defendant to him that he asked the defendant how much he had had to drink, and defendant said: "Two beers and two shots of whiskey".

Defendant consented to and did take an intoximeter test. P. L. Wood, chemist for the Department of Public Safety, testified as to the result of said test. The test showed 0.11 per cent alcohol, a little less than the level where all persons would be expected to be intoxicated.

The gist of this expert's testimony was that a person whose alcoholic blood content registered 0.05 per cent had probably taken one or two drinks, and from such point progressed toward intoxication, which could be expected to be reached for all people at 0.15 per cent of blood alcohol level.

The defendant testified and denied that he was intoxicated, or had drunk any whiskey. He said that when he ate his supper at Calvin about six o'clock the evening in question that he drank one bottle of beer. He said that he was a truck driver for the Gray Van Lines, and had driven over half a million miles as a driver, over a great portion of the United States, and had never had an accident or been arrested for a traffic violation. He said that on the night in question he had stopped his truck at the tavern testified to by witness Hunter to check his right front wheel; that it would keep snapping off lugs and he had to replace lugs and bolts all the time to keep it on. He said that he did stop at the slab as stated by the officer, and did look to see that the

road was clear before entering; that he did stop at the wreck momentarily and drove on toward Okmulgee; that he did blink his lights because he thought the wheel was giving trouble and should be checked and he wanted to drive around the car ahead and get off the slab on an open place before getting to a river bridge; that he did drive off the highway and get out and stooped over to check his wheel and that a man grabbed him by his arm and commenced leading him back to a car; that witness Hunter had on no badge or uniform and defendant thought that he was being hijacked and jerked loose, and then officer Hunter knocked him down twice before showing a card and badge and saying that he was an officer. He denied having cursed officer Hunter.

Defendant said that he had been having trouble with some teeth, shown at time of trial to have been pulled, and that he had been using some drops to bathe his gums. This evidence was apparently for the purpose of explaining any odor about his breath.

From the above it is clear that there was a sharp conflict in the evidence as to the intoxication of the defendant. Counsel argues in effect that officer Hunter got mad at defendant and arrested him, and that the intoximeter test did not show the defendant intoxicated, registering less than 0.15 per cent., and that the other officers without justifying evidence were merely trying to support a fellow-officer in upholding his charge. Indeed, the defense is that the intoximeter test negatives all the other evidence of the State, and that the State therefore failed to make out a case.

The question at issue has been decided in principle by the case of Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812. That case supports the principles stated in the official report as follows:

"The law makes no distinction in weighing evidence between expert testimony and evidence of other character in criminal prosecution, and it is for

jury and not for reviewing court to determine weight to be given such evidence. * * *

"In drunken driving prosecution of motorist who had voluntarily consented to drunkometer and urine tests to determine amount of alcohol in motorist's blood, wherein experts for the state testified that the tests were accurate, objection to testimony of experts only went to its weight and not to its admissibility, but trial court should have instructed jury that such expert testimony was not conclusive and was admitted only to be accorded such weight as jury might think it was worth."

 The Toms case is the leading case from this jurisdiction covering the matter of the drunkometer breath test, and should be referred to for detailed treatment of the subject. We would, with approval, here point out a quotation from Medicolegal Problems, by Samuel A. Levinson, M.D., Ph.D., where it is stated:

"1. Where there is less than 0.05 per cent alcohol in the blood or equivalent amounts in other body fluids or breath, the subject shall be presumed to be not under the influence of alcohol so far as the operation of a motor vehicle is concerned.

"2. Where there is 0.15 per cent or more alcohol in the blood, or equivalent amounts in other body fluids or breath, the subject is presumed to be under the influence of alcohol, as far as the operation of a motor vehicle is concerned.

"3. Where there is between 0.05 per cent and 0.15 per cent alcohol in the blood, or equivalent amounts in other body fluids or breath, the results of such tests may be received along with other tests or observations for consideration by the court or jury as bearing upon the question of alcohol influence.

"This arrangement adequately safeguards the interests of the person who has been properly temperate in his drinking. Impairment sufficient to adversely influence driving ability is demonstrated quite clearly in the average individual at alcohol concentrations of 0.09 per cent to 0.11 per cent in the blood. Thus the establishment of 0.15 per cent as the presumption limit gives a considerable degree of grace for individual variation, which protects the most resistant or tolerant driver and also makes allowances for the mild antidotal effect of coffee, caffeine, benzedrine, and similar stimulants which might have been taken." (Emphasis supplied.)

 We conclude that the results of the drunkometer test, standing alone, were not conclusive of the intoxication or non-intoxication of the defendant, but such results of the drunkometer test might be received in evidence along with other tests or observations for the consideration of the jury as bearing upon the question of alcohol influence, and the jury would give the various kinds of evidence such weight as it might see fit from all the facts submitted for consideration, in reaching its ultimate conclusion.

 Such being our conclusion, the jury's findings in the within case are conclusive, in view of the uniform holdings of this court that it is the sole and exclusive province of the jury to make findings of fact, and that though the evidence in a criminal case is conflicting, this court will not interfere with the jury's findings where the evidence reasonably tends to support the same. Logan v. State, Okl.Cr., 269 P. 2d 380; Hinkefent v. State, Okl.Cr., 267 P.2d 617; McDaniel v. State, 95 Okl.Cr. 311, 245 P.2d 771; Lombness v. State, 95 Okl.Cr. 214, 243 P.2d 389.

The judgment and sentence of the county court of Okmulgee County is affirmed.

BRETT, J., concurs.