Forrest PIERCE, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12919.

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1961.

**648**

Klem & Thomas, Shattuck, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Forrest Pierce, hereinafter referred to as defendant, was prosecuted by information filed in the county court of Ellis County, charging him with the offense of operating a motor vehicle upon a public highway in Ellis County while under the influence of intoxicating liquor. The case was tried before a jury, defendant was found guilty and his punishment fixed by the jury at ten days in jail and a fine of $25.

This case has been fully briefed by both the counsel for defendant and the State, and oral argument was heard on November 2, 1960. The complete record has been carefully read. Four propositions are advanced for reversal of the conviction.

First, it is urged that the case must be reversed by reason of the admission of hearsay evidence. We shall, therefore, summarize the pertinent evidence, including that complained of.

Calvin A. Vincent, sheriff of Ellis County, testified that on January 22, 1959 at about 4:45 p. m. he was in the radio room at the city hall at Shattuck talking to the Chief of Police when Mr. and Mrs. Bert Hayes drove up in front of the city hall and Mrs. Hayes rushed in. The county attorney then asked witness what Mrs. Hayes told him. This question was objected to by defense counsel as hearsay. The court overruled the objection. Witness answered: "She come in the city hall and said: 'Calvin, get out there on the highway towards Gage, on No. 15 highway.' She said, 'Forrest Pierce is out there in his old pickup running everybody off the road. He is drunk. We had a heck-of-a-time getting around him. Get out there before he kills somebody.' "

Of course this was the worst kind of hearsay evidence, and the court committed error in permitting the sheriff to repeat what the woman had told him. Witness could, of course, properly have said that in response to a conversation with Mrs. Hayes he drove out on Highway 15 towards Gage. And could have, as he did, tell about thereafter seeing and talking with the defendant.

Witness said that after talking with Mrs. Hayes he asked the chief of police to go with him, and they drove out on the highway towards Gage and met the defendant Forrest Pierce in his pickup about two and a half or three miles out of Shattuck. He said that defendant was driving in the middle of the road and witness pulled over and slowed down and defendant drove on by and witness turned his car around and drove behind defendant. He further testified:

"A. Proceeding after him we caught him about a quarter of a mile after we turned around. While we were getting up close to him he would drive over the center line and go back off of the road on the north side and back on the pavement, and then back and forth. We pulled up beside him and blew our horn and siren and he kept going. We pulled up again with the siren blowing and horn blowing, he kept looking out of his pickup window at us, and finally he pulled over and stopped.

"Q. What did you do at that time, Calvin, after you had Mr. Pierce stopped? A. I got out of the car and the Chief of Police got out of the car, we both walked back to his pickup. I opened the door and I said, 'Hello, Forrest', and he said, 'Hi, kid', or something like that. We greeted each other. I told him to get out. He got out and just could stand.

\* \* \* \* \* \*

"Q. You said that he just did get out. What do you mean by that? A. He started to get out of the pickup and reached up—I reached up, and helped him out. When he got out he said, 'Hi,

kid'. He threw his arms around me and laid up against me. I said, 'Forrest, you have been drinking quite a bit, haven't you?' He said, 'Just one or two beers.' I said, 'Forrest, you have drank more than that, I am going to have to arrest you for drunk driving.' I said, 'Do you know your rights?' and he said, 'Yes.'

"Q. At the time you placed Mr. Pierce under arrest did you inform him of his rights? A. I did right then. I told him he could talk to a lawyer, and he said he knew that. I said, 'How many beers did you have to drink?' He said, 'Three or four'. He said, 'I have been over to Gage buying groceries and I have had just three or four beers.' I said, 'We will have to put you under arrest.' He said, 'You don't have to take me in, I have known you a long time.' I got him by the arm on one side and the Chief of Police got him on the other side, and we led him back to our car and put him in. I took him back to Shattuck.

\* \* \* \* \* \*

A. Going into town I radioed Roy Likes, the Highway Patrolman. We took him in and Mr. Likes advised him again of his rights, and he told him if he would, he wanted him to take a blood test. He said he wasn't afraid of a blood test. He said he would take one. We put him in the Highway Patrol car and took him up to the Shattuck Clinic.

"Q. Did he give his blood test freely? A. Yes.

"Q. You didn't threaten him? A. No.

"Q. Was there any evidence that Mr. Pierce had run into anything? A. Yes, there was.

"Q. Would you tell the court and jury about that? A. The left front fender of his car, of his pickup, was damaged, had black creosote on it like it had hit a post. The front fender was black."

Witness testified to his experience as a peace officer and observing drunks, and testified that in his opinion defendant was definitely intoxicated. Said he:

"When I opened the door I could smell him, and just the way he looked, his eyes was bleary, and he was all de-arranged, his clothes and all. He was not neat like he is now. * * * We had to hang on to him or I believe he would have fallen."

Cecil Beagles, chief of police of Shattuck, testified to being at the Shattuck city hall with Sheriff Vincent on January 22, 1959, at about 4:25 in the afternoon when a Mrs. Hayes came in. He was permitted, over the objection of counsel for the defendant, to state what Mrs. Hayes reported to the sheriff, and being to the effect that there was a drunk driver east of town on the highway weaving back and forth across the road. This kind of testimony is classed as hearsay, and was inadmissible, as we have already said.

Witness testified substantially as Sheriff Vincent and gave it as his opinion, based on defendant's appearance, manner of driving, alcoholic odor, etc., that he was intoxicated at the time he and Sheriff Vincent stopped him. Witness drove defendant's green pickup into Shattuck while the defendant rode in the sheriff's car.

Roy Likes, trooper with the Oklahoma Highway Patrol, testified that on January 22, 1959 at about 4:59 in the afternoon he was driving on a highway in Ellis County about one mile from Shattuck and received a call from Sheriff Vincent, and in response drove to the city hall in Shattuck. He said that when he got to the city hall he found Sheriff Vincent and Chief of Police Beagles, and he identified the defendant as the man they had in custody. He was asked what took place and said that defendant was advised of his constitutional rights. He said that defendant agreed to take a blood test for alcohol, and that witness and others accompanied defendant to the local hospital for that purpose. Witness said:

"A. I told Mr. Pierce that if he took the blood test and it came back and showed he hadn't had the legal amount of alcohol to be considered intoxicating it would clear him, and therefore charges couldn't be filed against him; and if it came back and showed he had been drinking enough that he was intoxicated that it would be used against him in court.

"Q. What did he say to that? A. That he was willing to take it."

Witness further said that he received the blood in a sealed container and mailed it to the State Laboratory in Oklahoma City. He further stated that he knew that a person's blood must contain .15 of one per cent of alcohol before he could be classified as intoxicated. He also said:

"A. After we placed Mr. Pierce in the Shattuck jail I went out east of Shattuck where he was reported to have run into a post. I found a creosoted post on the left hand side of the highway, on the south side of the highway that had been run into by some vehicle that had green paint, there was green paint on the post."

Witness stated that he later investigated that accident further and found that defendant Pierce had been driving a green Chevrolet pickup at the time he was arrested. He said his pickup had the left front fender smashed in, the left front headlight damaged, and the whole left bumper and fender were damaged, and that there was a black tarry substance on the pickup.

As to defendant's physical condition at the time he saw him at the city hall, he said:

"He was flushed about the face, his eyes were bloodshot, he staggered when he walked, in fact he fell down into a flower bed in front of the city hall when we was taking him from the city hall up to the hospital. He fell down over into the flower bed. Also, the way he talked."

The officer gave it as his opinion that defendant was very intoxicated.

On cross-examination witness was asked and answered:

"Q. Going back to the blood test. You advised him he did not have to submit to that, and what else did you tell him? A. I told him if he took the blood test and it came back showing more than .15 of one per cent that it could be used against him, and if it was less, the charges could not be maintained against him for driving while intoxicated, or could not be filed.

"Q. You said the charges could not be filed if the blood test showed less than .15 of one per cent? A. Ordinarily it is not filed."

Defense counsel thereupon handed witness a copy of the information dated January 23, 1959 and asked witness how long it took to receive a report from the blood test and witness answered two or three days. Witness admitted that the results of the blood test had not been received at the time the information was filed. The information was received in evidence. Also defendant offered Exhibit No. 3, being an excerpt from Manual of Clinical Laboratory Methods, by Opal E. Helper, Ph. D., M.D., Charles C. Thomas, publisher, page 330, Interpretation of Blood and Urine Alcoholic Findings, in which it is stated: "A level of 200 mg. per cent in blood is considered a definite indication of intoxication."

■ Of course this Court has held that a person may be said to be intoxicated where the percentage of alcohol in the blood is .15 of one per cent. Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812, 816; Armstrong v. State, Okl.Cr., 300 P.2d 766, 769.

This concluded the evidence for the State, and defendant interposed a demurrer which was overruled.

The defendant testified in his own defense, as follows:

"Q. Did you hear this morning that they testified you were drunk on the 22nd day of January, 1959? A. I couldn't hear all of it.

"Q. Were you or were you not drunk on that day? A. No, sir.

"Q. That is all."

There was no cross-examination.

Counsel for the defendant offered a page from a text, Clinical Laboratory Methods and Diagnosis, by Gradwohl, in an attempt to show that it requires 0.272 of alcohol in the blood for a person to be classed as intoxicated.

The State had been unable to produce the chemist from Oklahoma City to testify concerning the blood test in question, so there was no evidence as to what the alcoholic content of defendant's blood might have been, if any, and as supposedly would have been disclosed from the chemical analysis, if it were made. The testimony admitted concerning the blood test was preliminary and a foundation for testimony of the chemist making the test. When he did not appear, the court would have no doubt stricken all testimony concerning a blood test, if counsel had made the request. The court correctly denied admission of defendant's Exhibit No. 4. As we have stated, supra, this Court recognizes .15 of one per cent of alcohol in the blood as being the standard for determination of the question of intoxication.

■ From the record that we have summarized, the evidence was overwhelming as to defendant's intoxication. If this question was close, then the hearsay evidence admitted and that has been pointed out, might work a reversal. But there must not only be error, but prejudice resulting therefrom. Nowlin v. State, 65 Okl.Cr. 165, 83 P.2d 601.

■ The applicable rule is clearly stated in Johnson v. State, 70 Okl.Cr. 270, 106 P.2d 149, where this Court said:

"Where the uncontroverted evidence on the part of the state establishes the guilt of the accused beyond any reasonable doubt, error of the court in admitting incompetent evidence does not require a reversal, unless, upon an examination of the entire record it is apparent that such admission resulted

in a miscarriage of justice, or deprived the accused of some constitutional or statutory right."

The conduct of the county attorney in examination of Chief of Police Beagles and Trooper Likes in laying a predicate for requesting their opinion as to whether or not defendant was intoxicated when they saw him, is complained of as prejudicial. Cited is Neely v. State, 60 Okl.Cr. 99, 61 P.2d 741, which holds that the repeated asking of incompetent questions, which clearly have for their purpose the intimation of something to the jury that is either not true or not capable of being proven, is wrong, and such conduct of counsel is not cured because the court sustains the objections to the questions.

While the county attorney did flounder some, in laying a predicate for his questions concerning the opinions of those witnesses as to defendant's intoxication, he finally developed the facts that we have summarized, and we do not consider the Neely case applicable.

And as we have stated, the questioning of Trooper Likes was apparently laying a foundation for questioning the chemist who analyzed defendant's blood, but the chemist for some reason did not arrive in time to testify. The assumption was of course that the blood test must have supported the charge. Nevertheless, counsel did not ask that the evidence concerning the blood test be stricken, when the chemist failed to appear. On the contrary, he was successful in getting over to the jury the information in his Exhibit No. 3, where it was the opinion of Opal E. Helper, Ph.D., M.D., that it required a level of 200 mg. per cent in blood before a person could be said to be intoxicated.

■ The evidence as to defendant's intoxication was so conclusive, the questioning by the young county attorney so devoid of calculation to injure, that we must hold that the matters complained of are not sufficient to work a reversal. The principle involved is applied in Gilbert v. State, 23 Okl.Cr. 352, 214 P. 936.

It is finally urged:

"Comment on the evidence during argument to the jury by the county attorney was calculated to arouse prejudice or passion of the jury and prevent accused from having a fair and impartial trial, and further substituted the personal opinion of the county attorney upon the guilt or innocence of the accused in place of fair comment upon the evidence and thus accused was prevented from having a fair and impartial trial as provided by the constitution of Oklahoma, and the United States."

In connection with this proposition, it is claimed that the State failed to prove venue.

While the county attorney failed to ask any of his witnesses whether or not the point where defendant was seen driving his pickup was in Ellis County, Sheriff Vincent testified to driving out on the highway out of Shattuck and seeing defendant driving his green Chevrolet pickup in an erratic manner and of turning around and following defendant toward Shattuck for about a quarter of a mile before defendant was stopped.

■ We notice too that defendant introduced into evidence the information in the case, which alleged the driving took place on State Highway 15, approximately two miles northeast of Shattuck, in Ellis County. This circumstance indicates that defendant at the moment was satisfied as to venue.

■ This Court has many times held that while it is the duty of the prosecution to prove venue, we have said that such may be established by circumstantial evidence, and need not be shown beyond a reasonable doubt. See Swift v. State, 92 Okl.Cr. 43, 220 P.2d 300; Turner v. State, Okl.Cr., 285 P.2d 459.

■ This Court will take judicial notice that it is more than three miles any direction on any highway out of Shattuck before one may get out of Ellis County.

Counsel is correct in saying that a county attorney in argument to the jury may not express his personal opinion relative to

the guilt of the defendant without referring to the evidence to substantiate the conclusion. There are many cases from this Court to that effect. We do not believe that the county attorney in the within case gave his positive opinion that the defendant was guilty. He said: "I said I believe the evidence would establish that the man was drunk, and that he was driving the automobile in Ellis County, Oklahoma."

As contended by the Attorney General, this Court in Beason v. State, 18 Okl.Cr. 388, 195 P. 792, and in many other cases thereafter, held that the county attorney had a right, in his argument to the jury, to state his conclusions from certain portions of the evidence favoring the State's theory of the case, although the evidence favoring such inference might not be too strong or clear. Here, as we have demonstrated, the evidence against defendant was overwhelmingly sufficient to support the verdict of the jury.

The judgment is affirmed.

NIX and BRETT, JJ., concur.