**L. P. HAMMONDS, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A–12967.**

Court of Criminal Appeals of Oklahoma.

June 7, 1961.

As Amended on Denial of Rehearing
July 20, 1961.

Geo. L. Hill, McAlester, Kenneth W. Lackey, Eufaula, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by L. P. Hammonds, plaintiff in error, defendant below. Hammonds was charged by information in the district court of McIntosh County, Oklahoma, with the crime of first-degree manslaughter by reason of defendant affecting the death of Georgia Evans, without premeditated design, but while engaged in the commission of a misdemeanor, in driving his automobile in a southerly direction at an excessive rate of speed to the left of the center of Highway No. 69, while meeting on-coming traffic moving north, and while

under the influence of intoxicating liquor, resulting in a head-on collision with the automobile driven by Mrs. Evans.

The defendant was tried to a jury, convicted and his punishment fixed at ten years in the penitentiary. Judgment and sentence was entered accordingly, from which this appeal was perfected.

■ The evidence was conflicting, but the record clearly supports the jury's finding of defendant's guilt under the allegations of the information. The evidence amply supports the finding that the defendant drove his automobile to the left of the center of Highway No. 69, at a speed greater than would permit him to bring the said automobile to a stop within the assured clear distance ahead, while defendant was under the influence of intoxicating liquor.

Highway Patrolman A. J. Hayes arrived at the scene shortly after the collision. His investigation, he related to the jury, disclosed that the cars collided on the east side of the highway and the shoulder. The Evans car was in its east lane going north, while the defendant's car was on the wrong side of the highway, going south. He testified that the cars collided head on with some damage to the right side of both automobiles. His investigation further revealed that the Hammonds car laid down 100 feet of tire marks on the pavement and the shoulder to the point of impact with the Evans automobile.

The patrolman's investigation revealed no skid marks were left by the Evans car.

Janetta Pearl Evans, the 16-year old daughter of Mr. and Mrs. Evans, testified that her mother was not driving fast, in fact she had "almost stopped". They were on their side of the road when suddenly the Hammonds car was coming straight towards them, and "hitting us straight on, head first, * * *."

Beverly Evans, the 14-year old daughter of Mr. and Mrs. Evans, corroborated her sister's testimony.

The State established that the defendant Hammonds smelled strongly of moonshine whiskey after the collision, and even for several hours thereafter.

The defense was that a carload of young men was driving ahead of defendant, and he tried to pass them and as he would speed up to pass, they would also speed up, and when he slowed down they slowed down, interfering with his operation. Suddenly the Evans car loomed ahead and he saw their peril and took to the east side shoulder, so that the on-coming car could pass between his car and the boys' automobile, but the Evans car did not make it, and collided with defendant's car, killing both Mr. and Mrs. Evans.

The defendant denied drinking intoxicants the day of the collision. Witness Ruben Roland testified that he did not see the defendant drinking the day of the accident, and that he was not drunk.

The defendant points out that in another case against the defendant for the death of Mr. Evans, the jury was unable to agree and a mistrial was declared, with which we are not concerned herein. He admitted two prior felony convictions.

■ The foregoing evidence, reviewed in substance, presented a conflict for the sole determination of the jury, which they resolved against the defendant.

As we said in Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts."

The defendant first contends that the state should have been required to elect between the three misdemeanors allegedly contributing to the death of Mrs. Evans for which he was on trial.

■■ This contention is wholly without merit, either as a matter of pleading or

proof in a case of this character. Substantially the same contention was advanced in Payne v. State, Okl.Cr., 276 P.2d 784, 789, wherein the information alleged the same identical misdemeanors, except for the allegation herein of driving on the left of center of the highway. Therein we quoted with approval from the case of Bowman v. State, 82 Okl.Cr. 199, 167 P.2d 663, 667, wherein this court stated:

"The information does not charge two offenses. It only charges the commission of one offense, to-wit, manslaughter in the first degree, but it does allege different acts which were committed by the defendant which would constitute the offense of manslaughter in the first degree."

Such pleading being permissible, it necessarily follows that the proof in accordance therewith would be permissible and an election should not be required as between the misdemeanors alleged constituting the basis for the offense of manslaughter. Hill v. State, Okl.Cr., 266 P.2d 979; Bowman v. State, supra.

The defendant next contends it was error for the trial court not to permit cross-examination of the witness Ruben Roland. The state put him on the stand and established by him his identity, place of residence, his acquaintance with the defendant, his association with defendant the day of the accident, his involvement as a passenger in the defendant's car. Except by innuendo there was no proof that this was the accident herein involved. Then the state ended its examination. The defense then undertook to examine the witness Roland as an hostile witness in regard to the details and incidents of the collision and as to matters going to his credibility, and the trial court refused the attempt over strenuous objections. Later the defendant called the witness Roland, who testified willingly, fully and completely in behalf of the defendant. The trial court's refusal to permit the cross-examination, we think under the conditions, constitutes technical but

harmless error. We reach this conclusion on the following premises:

In Rogers v. State, 8 Okl.Cr. 226, 127 P. 365, 366, this court held:

"Where a party places a witness on the stand, who testifies to a transaction or part of a transaction, it is the right of the opposing side on cross-examination to bring out anything which may have happened during the time covered by the testimony of the witness given in his direct examination which had previously been omitted, and which would in any manner tend to shed light upon the transaction testified to.

"Where the state places a witness on the stand, who testifies to a certain transaction, it thereby voluntarily opens the door which it cannot arbitrarily close, until the defendant on cross-examination has brought out all the facts within the knowledge of such witness material to a thorough understanding of that part of the transaction which the state has proven."

In the body of the opinion Judge Furman, speaking for the court, said:

"There is no more philosophical and safer authority on the subject of evidence than Mr. Wigmore. He says:

"'The Theory of Cross-Examination. (1) Proof by direct examination of the same witness contrasted. The fundamental feature is that a witness, on his direct examination, discloses but a part of the necessary facts. That which remains suppressed or undeveloped may be of two sorts: (a) The remaining and qualifying circumstances of the subject of testimony, as known to the witness; and (b) the facts which diminish and impeach the personal trustworthiness of the witness. (a) The remaining and qualifying circumstances of the subject of testimony will probably remain suppressed or undisclosed, not merely because the witness frequently is a partisan, but also and

chiefly because his testimony is commonly given only by way of answers to specific interrogatories (ante, §§ 768, 785), and the counsel producing him will usually ask for nothing but the facts favorable to his party. If nothing more were done to unveil all the facts known to this witness, his testimony (for all that we could surmise) might present half-truths only. Some one must probe for the possible and (usual) remainder. The best person to do this is the one most vitally interested, namely, the opponent. Cross-examination, then—i. e., further examination by the opponent—has for its first utility the extraction of the remaining qualifying circumstances, if any, known to the witness, but hitherto undisclosed by him. (b) The facts which diminish and impeach the personal trustworthiness or credit of the witness will also, in every likelihood, have remained undisclosed on the direct examination. These it is the further function of the opponent's examination to extract. Some of them, no doubt, could be as well or sometimes better proved by other witnesses. But many of them can be obtained only from the witness himself—particularly those which concern his personal conduct and his sources of knowledge for the case in hand. To this extent, again, cross-examination is vital; i. e., it does what must be done and what nothing else can do. See Vol. 2, § 1368, Wigmore on Evidence.'

"The English and Canadian courts and many of the courts of the American states go much further than this, holding that, when a witness is placed on the stand to prove one fact, he may be cross-examined by the opposite side as to the entire case. Many good reasons are given for this rule, and the weight of modern authority seems to support it."

It is thus apparent that under our rule the trial court erred in not permitting cross-examination of Roland. But under the circumstances herewith presented, it was error without injury, for later in the trial the defendant called Roland and examined him intensively concerning his knowledge of the collision, and what was not established by the defendant favorable to him, was completely done by the state. It is pertinent in this regard that the witness Roland on cross-examination by the State drew from the witness that he had not been drinking the day of the collision, and he did not see defendant doing so that day. Hence, while it was error to not permit cross-examination of Roland, the defendant cured the damage that might have been claimed had he not elected to make him his witness and together with the state exhausted his knowledge of the collision. This was error without damage, not requiring reversal. Pierce v. State, Okl.Cr., 358 P.2d 647; Collins v. State, 96 Okl.Cr. 335, 255 P.2d 292.

The defendant further contends that the trial court erred in not giving the jury his requested instruction that the matter be resubmitted to the jury for them to determine the punishment.

■ The jury had returned its verdict of guilty of manslaughter in the first degree, but stating they were unable to agree on the punishment, and requesting the trial court to assess the same. No objection or request for the jury to fix the punishment appears until after the trial court had begun the consideration of other matters. This request came too late, under our decisions.

In Adams v. State, Okl.Cr., 314 P.2d 371, we held that where, prior to the time that the jury started its deliberations, the defendant did not request that the jury fix the punishment, after the jury returned its verdict of guilty it was too late for defendant to request that the jury be required to return to the jury room and fix the punishment to be assessed; and cited Fain v. State, 14 Okl. Cr. 556, 174 P. 296; Ex parte Monroe, 89 Okl.Cr. 358, 207 P.2d 944; Tilghman v. Burns, 91 Okl.Cr. 359, 219 P.2d 263.

The case of Shanahan v. State, Okl.Cr., 354 P.2d 780, relied on by the defendant, is distinguishable from the case at bar, and

was not controlling in the trial of this case. But even in that case timely request for the jury to fix the punishment must be made before the matter is submitted to the jury. Herein the defendant waived his right to such request until after the jury had deliberated and returned their verdict, hence he had invited and acquiesced in the error, if any, under the conditions and is in no position to avail himself of the jury's failure to fix the penalty. He had elected to abide the jury's return and he was bound by their verdict. If timely objection had been made, as in the Shanahan case, it would have been error not to have complied with the defendant's request.

■ The defendant contends that the trial court erred in not giving his requested instruction No. 1, as follows:

"You are further instructed that if you find and believe from the evidence that there was another car that contributed to and caused defendant to be on the left side of the Highway, that such is sufficient grounds to constitute an intervening cause, and you must find the defendant not guilty by reason thereof."

This instruction does not state the law, even if the defendant's theory of defense be true. To so hold would absolve the defendant from recklessly passing another automobile without regard to on-coming traffic, and eventually negate the rules of the highway. It would place a greater burden on the careful, prudent driver, driving in his lane, than on the reckless and even drunken driver driving in the wrong lane while meeting traffic. Such a rule as herein contended for would only promote senseless confusion, and utter irresponsibility, for death and destruction on our highways.

■ Finally, the defendant contends that the trial court erred in permitting Dr. Oglesby, who attended the defendant Hammonds when he was brought to the hospital, to testify over objection that "he [defendant] smelled like whiskey", and without objection, that he smelled alcohol on him, but he did not know whether he was drunk or sober. The Attorney General concedes Dr. Oglesby would be bound by the general rules applicable to a physician's testimony arising out of the confidential relationship of physician and patient. We agree. But the application of the rules governing that type of testimony is limited by the rule announced in In re Swartz's Will, 79 Okl. 191, 192 P. 203, 16 A.L.R. 450, syllabus one reading as follows:

"Paragraph 6, § 5050, Rev.Laws 1910 [12 O.S.1951 § 385] providing that a physician or surgeon shall be incompetent to testify concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of such patient, does not apply when the circumstances surrounding the communication, or knowledge obtained by personal examination, were such as to show that what was said or discovered on the occasion was not intended to be confidential, and especially when third persons were present and heard all that was said between the deceased and the physician, and the knowledge obtained by a personal examination was as patent to third persons as it was to the physician."

■ The doctor's testimony was not detrimental in view of the fact that he flatly stated he did not know whether defendant was drunk or sober. But when Bob Harshaw testified that the defendant smelled of alcohol, or moonshine whiskey, "very strong", it becomes obvious the condition described by both him and Dr. Oglesby was not, and was not intended to be confidential information, but was a matter open to the public. In the case relied upon by defendant, Clapp v. State, 74 Okl. Cr. 144, 124 P.2d 267, the doctrine of the deprival of a substantial right to defendant's material injury is emphasized. A condition open to the public, such as strongly smelling of alcohol, could not be classified as within the category of confidential information. Moreover, the testimony of Dr. Oglesby, in light of Bob Harshaw's testi-

mony, is harmless, being within the knowledge of a third person as much as it was within the knowledge of the doctor. Under these conditions, this point loses its force.

For the foregoing reasons, the judgment and sentence is, accordingly, affirmed.

BUSSEY, J., concurs.

NIX, P. J., not participating.